IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO


RALPH TUCKER, MILAGROS PEREZ
TUCKER, ETC.

     **Plaintiff(s)**

       **v.**

MANHEIM AUTO AUCTION, ET AL

     **Defendant(s)**

**CIVIL NO.** 98-1314 (JAG)

---

## OPINION AND ORDER

On February 15, 2002, Magistrate Judge J. Antonio Castellanos issued a Report and Recommendation recommending that the Court grant defendants Manheim Auto Action's and Cox Enterprises, Inc's (collectively, "defendants") motion for summary judgment. (Docket No. 45.) On February 25, 2002, plaintiffs Ralph Tucker and Milagros Perez Tucker, and their conjugal partnership (collectively, "plaintiffs") timely filed objections to the Report and Recommendation. (Docket No. 45.) For the foregoing reasons, the Court adopts the Report and Recommendation and grants defendants's summary judgment motion.

### FACTUAL BACKGROUND

In 1996, plaintiff Ralph Tucker moved to Puerto Rico, looking to establish a wholesale auto auction business on the island. He held preliminary conversations with Ford Motor Company



AO 72A
(Rev 8/82)



Civil No. 98-1314(JAG)                                                    2

representatives to inquire about their interest in consigning their lease-return vehicles to a wholesale auto auction business.  Ford's representatives informed Tucker that they had a pre-existing relationship and commitment with defendant Manheim Auto Auctions, Inc., and encouraged Tucker to speak to Manheim's representatives.

Tucker thereafter contacted Bill Tiedemann, Vice President of Special Operations for Manheim Auctions, Inc., about the potential for establishing a wholesale auto auction business in Puerto Rico. Tucker met with Tiedemann later that year.  Tiedemann met with Ford representatives in Puerto Rico and decided to create Manheim's Caribbean Auto Dealers Exchange, Inc. ("MCADE"), a subsidiary of Manheim, as a company that would conduct wholesale auto auctions on the island.  Tucker and Tiedemann together inspected large parcels of real estate (for potential business sites) and met with various industry representatives.

In October, 1996, Tiedemann made, and Tucker accepted, an oral offer of employment to become an MCADE employee.  His job responsibilities included obtaining commitments from Puerto Rico car dealers to consign cars for wholesale auto auctions.  Tucker was 60 years old at the time he was hired.

Sometime after October, 1996, Tiedemann introduced Tucker to Jeff Groppuso, a person who had previous experience in running auto auctions and who, unlike Tucker, spoke fluent Spanish.  Tucker initially understood that Groppuso would come into MCADE as his

Civil No. 98-1314(JAG)                                                    3

assistant.  Groppuso informed Tucker otherwise: Groppuso believed

that he would become MCADE's General (or Auction) Manager, and that

the company would terminate Tucker.    MCADE thereafter hired

Groppuso, who was over 40 years old at the time. Tucker, concerned

about Groppuso's comments, sought a meeting with Tiedemann.

They met at a Banco Popular parking lot.    Tucker asked

Tiedemann to meet with Tucker's attorney, who was waiting across

the street.  Tucker wanted Tiedemann to clarify Groppuso's comment

and to discuss a proposal he had made during his employment

negotiation, at which time he had asked MCADE for a five-year

employment contract.  The parties, however, never signed a written

employment contract.

During the Tucker-Tiedemann conversation, Tucker expressed

discomfort with Groppuso's presence at MCADE, and requested

clarification as to his job title.    In response, Tiedemann

allegedly made the following remarks:

> Ralph, you're sixty years old.  Why would you want to go
> out and work 12 to 16 hours calling on dealers at your
> age, start all over again.  We would like you to maybe
> set up golf tournament [sic], be an assistant, when my
> boss come [sic] to town introduce him to Royal Motors and
> so forth.

Tiedemann agreed to meet with Tucker's attorney.  In that

meeting, Tiedemann claimed that Tucker had only been hired for a

six-month period.  Tucker argued that he had requested a five-year

Civil No. 98-1314(JAG)                                                    4

commitment from MCADE.  The meeting, needless to say, did not yield a mutually satisfactory agreement.

In March, 1997, MCADE held its first auto auction.  It held subsequent auctions on April 3 and April 17, 1997.  On every instance, the vehicles consigned for sale came almost exclusively from Ford.

On April 16, 1997, Tiedemann called Tucker and fired him.

### DISCUSSION

1. <u>Standard of Review</u>

A district court may, on its own motion, refer a pending matter to a United States Magistrate Judge for a Report and Recommendation.  28 U.S.C. §§ 636(b)(1)(B); Fed. R. Civ. P. 72(b); Local Rule 503.  The losing party may contest the Report and Recommendation by filing written objections within ten days of being served with a copy of the Report and Recommendation.  The Court must then make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  The Court may accept, reject or modify, in whole or in part, the magistrate's recommendations.  "Failure to raise objections to the Report and Recommendation waives that party's right to review in the district court and those claims not preserved by such objection are waived on appeal."  <u>Davet v. Maccarone</u>, 973 F.2d 22, 30-31 (1st Cir. 1992).

Civil No. 98-1314(JAG)                                                    5

2.    Plaintiffs's Objections

Plaintiffs have raised two objections to the Report and Recommendation.  The first objection centers around the Magistrate Judge's conclusion that plaintiffs had filed their opposition in untimely fashion, causing him "to ferret through uncontested issues of material fact."  (Docket No. 45 at 3.)  The Magistrate Judge, however, did not base his conclusion on plaintiffs's belated filing; rather, he fully analyzed their arguments, notwithstanding their apparent transgression.    Even  if  the  Court  accepted plaintiffs's objection and concluded that their opposition was timely filed, it would have no bearing on the Report and Recommendation's ultimate holding: that plaintiffs have no actionable claim under the ADEA.

Plaintiffs's second objection goes to the substance of the Magistrate Judge's ruling.  They contend that the Magistrate Judge erroneously ruled that Tiedemann's remarks regarding Tucker's age did not constitute direct evidence of age discrimination sufficient to submit the case to the jury "without further ado."  (Docket No. 46 at 3.)  They further claim that Tiedemann, the person who made the "highly discriminatory expression" was the same person who hired and fired Tucker.  (Id. at 2.)  Lastly, Tucker argues that the Magistrate Judge was not the "adequate party" to decide whether the conversation between Tucker and Tiedemann constitutes direct evidence of age discrimination.  Tucker claims that he "will show"

Civil No. 98-1314(JAG)                                            6

that his employer's stated reasons for discharging him are merely pretextual (presumably at a later juncture) but he nowhere states what those reasons might be.

3.   "Common Actor" Inference of Non-Discrimination

It is undisputed that Tucker was both hired and fired (at age 60) by the same person, Tiedemann. This "common actor" scenario creates a strong inference that age was not the motivating factor in the discharge. See, e.g., Jacques v. Clean-Up Group, Inc., 96 F.3d 506, 512 (1st Cir. 1996); Le Blanc v. Great American Ins. Co., 6 F.3d 836 (1st Cir. 1993); Grady v. Affiliated Cent., Inc., 130 F.3d 553 (2d Cir. 1997)(noting that the hiring and firing by the same actor makes it "difficult to impute to the [actor] an invidious motivation that would be inconsistent with the decision to hire"); Proud v. Stone, 945 F.2d 796 (4th Cir. 1991)(noting that "employers who hire workers within a protected group seldom will be credible targets for charges of pretextual firing"); Rand v. CF Inds., Inc., 42 F.3d 1139 (7th Cir. 1994)(noting that the hiring and firing of an employee within a protected class by a common actor would make it suspect that the employer "had suddenly developed an aversion to older people" shortly after hiring plaintiff); Davis v. CSC Logic, Inc., 82 F.3d 651 (5th Cir. 1996)(applying same-actor presumption).

Civil No. 98-1314(JAG)                                                7

That "strong inference" applies in this case, where Tiedemann knowingly hired Tucker at age 60 and fired him six months later. When the person who made the decision to fire was the same person who made the decision to hire, it is difficult to impute to him an invidious motivation that would be inconsistent with the decision to hire. See Grady, 130 F.3d at 560. "This is especially so when the firing has occurred only a short time after the hiring." Id. Since Tiedemann was willing to hire Tucker when he was already 60 years old, it seems most unlikely that he would have made the decision to fire Tucker on the basis of intentional age discrimination. If Tiedemann was motivated by age discrimination, he never would have hired Tucker in the first place. Simply put, plaintiffs's claims that animus existed in the firing but not the hiring defies common sense.

This conclusion, by itself, justifies dismissal of plaintiffs's ADEA claim. Since the Magistrate Judge's opinion did not expressly rely on this issue as the basis for dismissal, however, the Court will consider plaintiffs's substantive objection on its merits.

4.    Direct Evidence and the *McDonnell Douglas* Test

Plaintiffs's objection depends exclusively on the premise that Tiedemann's remark constitutes direct evidence of discrimination. They assign error to the Magistrate Judge's conclusion that Tiedemann's parking-lot remark, standing alone, did not constitute

Civil No. 98-1314(JAG)                                                    8

direct evidence of age-related discrimination.  In doing so, they fail to admit even the possibility that the remark could be construed as anything but direct evidence of discrimination; as a result, they do not argue in the alternative and attempt to discredit defendants's proffered rationale for discharging Tucker. They simply say that they will do so at an appropriate juncture – presumably when the case is tried before the jury.  Their strategy, however, will prevent them from doing so.

The problem with plaintiffs's argument is that it relies on a false premise.  Tiedemann's comment, standing alone, does not constitute direct evidence of discrimination.  "[D]irect evidence does not include stray remarks in the workplace, particularly those made by nondecision-makers or statements made by decisionmakers *unrelated to the decisional process itself*." <u>Santiago v. Canon, U.S.A., Inc.</u>, 138 F.3d 1, 6 n. 8 (1st Cir. 1998)(emphasis supplied).  Plaintiffs have pointed to an isolated remark that, even assuming *arguendo* that it suggested age-based animus, would be insufficient, standing alone, to prove an employer's discriminatory intent.  <u>Speen v. Crown Clothing Corp.</u>, 102 F.3d 625, 636 (1st Cir. 1996); <u>Shorette v. Rite Aid of Maine, Inc.</u>, 155 F.3d 8, 13 (1st Cir. 1998); <u>Williams v. Raytheon Co.</u>, 220 F.3d 16, 18 (1st Cir. 2000).  Plaintiffs, however, rely exclusively on Tiedemann's statement, without showing what other evidence points to age discrimination as the true reason behind his allegedly unjustified

Civil No. 98-1314(JAG)                                                    9

dismissal. Because that stand-alone comment cannot carry the day by itself, that failure fatally dooms their ADEA claim.

Even if the Court regarded Tiedemann's remark as adequate circumstantial evidence of age discrimination, defendants's motion would still prevail, because plaintiffs have presented no evidence to show that defendants's proffered reasons for discharging Tucker (reasons that, to a large extent, Tucker has not specifically contested) were pretextual.

In an ADEA discrimination action, the plaintiff bears the ultimate "burden of proving that his years were the determinative factor in his discharge, that is, that he would not have been fired but for his age." Mesnick v. General Elec. Co., 950 F.2d 816, 823 (1st Cir. 1991). Once the defendants articulated a rationale to justify the discharge, the presumption of discrimination vanished, and plaintiffs were required to do more than cast doubt on the defendants's proffered rationale. Connell v. Bank of Boston, 924 F.2d 1169, 1172 (1st Cir. 1991). At this stage, the evidence proffered "must be of such strength and quality as to permit a reasonable finding that the ... [termination] was obviously or manifestly unsupported." Ruiz v. Posadas de San Juan Assocs., 124 F.3d 243, 248 (1st Cir. 1997)(citing Brown v. Trustees of Boston Univ., 891 F.2d 337, 346 (1st Cir. 1989). Plaintiffs have brought forth no such evidence. Accordingly, under the McDonnell Douglas burden-shifting test, see McDonnell Douglas Corp. v. Green, 411

Civil No. 98-1314(JAG)                                                    10

U.S. 72, 802-804 (1973), plaintiffs's ADEA claim cannot survive, and the Court must dismiss it.  See Ruiz, 124 F.3d at 247-248 (articulating the McDonnell Douglas "familiar burden-shifting framework").

**CONCLUSION**

For the foregoing reasons, the Court adopts the Magistrate Judge's Report and Recommendation, and dismisses plaintiffs's ADEA claim with prejudice.  The Court dismisses plaintiffs's pendent state claims pursuant to 28 U.S.C. § 1367.  Judgment will enter accordingly.

IT IS SO ORDERED.

San Juan, Puerto Rico, this 22nd day of March 2002.

JAY A. GARCIA GREGORY
United States District Judge